FILED
CHARLOTTE, N.C.
FEB 14 2005
U.S. DISTRICT COURT
W. DIST. OF N.C.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO: 3:04CV644-K

| | |
|---|---|
| JAMES MORRISON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TOYOTA MOTOR CREDIT CORPORATION )<br>A.K.A. TOYOTA FINANCIAL SERVICES, )<br>)<br>Defendant. )<br>_____ ) | **ANSWER AND COUNTERCLAIMS** |

NOW COMES, Toyota Motor Credit Corporation also known as Toyota Financial Services ("TMCC"), by and through counsel, to answer and counterclaim in response to Plaintiff's Complaint as follows:

## FIRST DEFENSE

One or more Plaintiff's claims are barred by Rule 12(b)(6) of the Federal Rules of Civil Procedure. As to Plaintiff's defamation claim, the Complaint fails to state a claim against Defendant TMCC upon which relief can be granted, because a state law defamation claim is preempted by applicable Federal Law. Furthermore, the provisions cited by Plaintiff concerning the Fair Credit Reporting Act do not give rise to a private cause of action by Plaintiff against Defendant TMCC.

This case also should be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure or transferred the Middle District of Florida, Tampa Division. A substantial part of the events and acts giving rise to Plaintiff's claim did not occur in this district, but rather occurred in the Middle District of Florida, where Plaintiff allegedly resided at the time the events allegedly took place.



## SECOND DEFENSE

To the extent that any of Plaintiff's claims involve the claim of negligence, Plaintiff's alleged damages were caused by Plaintiff's contributory negligence or intentional wrongdoing or by the supervening, intervening or negligence of other persons.

## THIRD DEFENSE

Plaintiff has suffered no damages as a result of any alleged actions taken or not taken by Defendant TMCC.

## FOURTH DEFENSE

Plaintiff's claims against Defendant TMCC are barred, in whole or in part, by the doctrine of federal preemption.

## FIFTH DEFENSE

Plaintiff's claims against Defendant TMCC are barred, in whole or in part, by applicable statutes of limitation.

## SIXTH DEFENSE

Plaintiff's claims against Defendant TMCC are barred, in whole or in part, by the affirmative defenses of estoppel, unclean hands, waiver and/or laches.

## SEVENTH DEFENSE

Defendant TMCC asserts the defenses of truth, truth with a good motive, immunity and privilege concerning Plaintiff's claims.

## EIGHTH DEFENSE

Defendant TMCC has complied with the requirements of 15 U.S.C. §1681 et seq. Therefore, Plaintiff's claims are barred.

2

## NINTH DEFENSE

Plaintiff's claims against Defendant TMCC should be barred because Plaintiff failed to exhaust all administrative remedies as a condition precedent to bringing this lawsuit against Defendant TMCC.

## TENTH DEFENSE

Plaintiff failed to cooperate in the identity theft investigation as requested by Defendant TMCC. Upon information and belief, Plaintiff has failed to file a police report under oath to assert identity theft. Therefore, Plaintiff's claims are barred.

## ELEVENTH DEFENSE

Defendant TMCC asserts that Plaintiff is not entitled to recover punitive damages. It would be contrary to the purposes for which punitive damages are permitted. It would be contrary to public policy, unfair, and it would be a denial of Defendant TMCC's due process rights and protection from excessive fines as guaranteed by the Constitutions of the United States and the State of North Carolina. Defendant TMCC moves the Court that Plaintiff's claim for punitive damages be dismissed as a matter of Law.

## TWELFTH DEFENSE

Paragraphs twenty-one (21) and forty-four (44) of the Closed End Motor Vehicle Lease Agreement between James H. Morrison, lessee and Toyota Motor Credit Corporation, lessor by assignment, contains an agreement to arbitrate. To the extent that investigation and discovery determine that Plaintiff is the James H. Morrison who leased the 2003 Lexus motor vehicle in question, Defendant TMCC reserves the right to arbitrate this dispute pursuant to the terms of the Lease Agreement.

## THIRTEENTH DEFENSE

Defendant TMCC reserves the right to assert additional affirmative defenses and/or any other matter available to it based upon facts and circumstances as they become known through investigation, discovery or otherwise.

## FOURTEENTH DEFENSE

Defendant TMCC answers the 29 enumerated paragraphs of Plaintiff's Complaint in corresponding fashions as follows:

## PRELIMINARY STATEMENT

The unnumbered Preliminary Statement of Plaintiff is denied.

## PROVISIONS RELATING TO JURISDICTION OF VENUE

1. It is admitted that Defendant TMCC is a foreign corporation doing business in Mecklenburg County, North Carolina. Except as admitted herein, paragraph one (1) is denied because Defendant TMCC lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's averment.

2. Defendant TMCC denies that venue is proper in this District. Specifically, venue is improper in Mecklenburg County, North Carolina, pursuant to 28 U.S.C. §1391(b). Except as admitted herein, paragraph two (2) is denied because Defendant TMCC is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's averment.

3. Plaintiff's averment appears to call for a legal conclusion for which no response is required. Furthermore, Plaintiff's averment appears to be directed to the Court and not Defendant TMCC. To the extent that a response is required, Defendant TMCC denies paragraph three (3) because it is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's averment.

4

## PARTIES

4.  Paragraph four (4) is denied because Defendant TMCC is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's averment.

5.  It is admitted that Defendant TMCC is a foreign corporation with a headquarters in Torrance, California and is authorized to do business in the State of North Carolina. The remainder of paragraph five (5) calls for legal conclusions for which no response is required. Except as admitted herein, paragraph five (5) is denied.

6.  Paragraph six (6) is admitted.

## TRIAL BY JURY

7.  Paragraph seven (7) calls for a conclusion of law for which no response is required. To the extent that a response is required, it is admitted that Plaintiff may request a trial by jury subject to the requirements of the Federal Rules of Civil Procedure. Except as admitted herein, paragraph seven (7) is denied.

## STATEMENT OF FACTS

8.  Paragraph eight (8) is denied because Defendant TMCC is without knowledge or information sufficient to a form belief as to the truth of Plaintiff's averment.

9.  To the extent that Plaintiff may have disputed credit information with credit reporting services, Defendant TMCC complied with all applicable law. To the extent that Plaintiff may have notified Defendant TMCC of inaccurate credit information or alleged identity theft, Plaintiff failed to cooperate fully with Defendant TMCC in any investigation. Except as admitted herein, paragraph nine (9) is denied.

10. It is admitted that Plaintiff contacted Defendant TMCC either directly or through

5

credit reporting services on one or more occasions allegeding inaccurate credit information and possible identity theft. Plaintiff failed to cooperate fully with the investigation performed by Defendant. Except as admitted herein, paragraph ten (10) is denied because Defendant TMCC is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's averment.

11. It is admitted that Plaintiff contacted Defendant TMCC either directly or through credit reporting services on one or more occasions alleging inaccurate credit information and possible identity theft. Plaintiff failed to cooperate fully with the investigation performed by Defendant. Except as admitted herein, paragraph eleven (11) is denied because Defendant TMCC is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's averment.

12. Paragraph twelve (12) is denied because Defendant TMCC is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's averment.

## FIRST CAUSE OF ACTION

13. Defendant TMCC incorporates by reference herein as if set forth in its entirety paragraphs one (1) through twelve (12) of Defendant TMCC's Answer and Counterclaim.

14. Paragraph fourteen (14) calls for a legal conclusion for which no response is required. To the extent that a response is required, it is admitted that Defendant TMCC conducted an investigation concerning any disputed credit information or alleged identity theft to the best of Defendant TMCC's ability. Plaintiff failed to cooperate fully with Defendant TMCC's investigation. Except as admitted herein, paragraph fourteen (14) is denied.

15. Defendant TMCC admits that it conducted an investigation regarding alleged inaccuracies to Plaintiff's credit information concerning Plaintiff's account with Defendant TMCC. Plaintiff failed to cooperate fully with Defendant TMCC's investigation. Except as admitted herein,

6

paragraph fifteen (15) is denied.

16. Paragraph sixteen (16) is denied.

## SECOND CAUSE OF ACTION

17. Defendant TMCC incorporates by reference herein as if set forth in its entirety paragraphs one (1) through sixteen (16) of Defendant TMCC's Answer and Counterclaim.

18. Paragraph eighteen (18) is denied.

19. Paragraph nineteen (19) is denied.

## THIRD CAUSE OF ACTION: DEFAMATION AND SLANDER

20. Defendant TMCC incorporates by reference herein as if set forth in its entirety paragraphs one (1) through nineteen (19) of Defendant TMCC's Answer and Counterclaim.

21. Paragraph twenty-one (21) is denied.

22. Paragraph twenty-two (22) is denied.

23. Paragraph twenty-three (23) is denied.

24. Paragraph twenty-four (24) is denied.

25. Paragraph twenty-five (25) is denied.

26. Paragraph twenty-six (26) is denied.

27. Paragraph twenty-seven (27) is denied.

28. Paragraph twenty-eight (28) is denied.

29. Paragraph twenty-nine (29) is denied.

# COUNTERCLAIMS

Defendant TMCC counterclaims against Plaintiff James Morrison ("Morrison") as follows:

## FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT)

1. TMCC is a foreign corporation authorized to do business and doing business in the State of North Carolina.

2. Upon information and belief, Morrison is a citizen and resident of Mecklenburg County, North Carolina.

3. Upon information and belief, on January 30, 2003, Morrison leased under the terms of a Closed End Motor Vehicle Lease Agreement ("Lease Agreement") a new 2003 Lexus GX470, Vehicle Identification Number JTJBT20XX30003903 ("Motor Vehicle"). A copy of the Lease Agreement is attached as Exhibit "A" and incorporated by reference herein as if set forth in its entirety. The Motor Vehicle was leased from Lexus of Clearwater in Clearwater, Florida, and the Lease Agreement was negotiated in Clearwater, Florida.

4. On January 30, 2003, the Lease Agreement was assigned to TMCC by Lexus of Clearwater.

5. Upon information and belief, Morrison breached the Lease Agreement by defaulting on lease payments. TMCC repossessed the Motor Vehicle on March 6, 2004, mailed a Rights of Defaulting Parties-Lease Notice to Morrison on March 12, 2004, and sold the Motor Vehicle at private sale to the highest bidder for $39,800.00. Upon information and belief, there remains a deficiency owed to TMCC by Morrison under the terms of the Lease Agreement.

6. Upon information and belief, there is now due and payable to TMCC by Morrison under the terms of the Lease Agreement the deficiency balance of $5,797.75, plus interest from May 19, 2004, at the statutory rate of 8% per annum. Attached to this Counterclaim as Exhibit "B" and incorporated by reference herein as if set forth in its entirety is a copy of the May 19, 2004, Early Termination Accounting Letter and Statement.

7. Upon information and belief, under the terms of the Lease Agreement, Morrison agreed to pay to TMCC reasonable attorney's fees in the event of default. Pursuant to N.C.G.S. §6-21.2 and the terms of the Lease Agreement, TMCC, through this Counterclaim, makes demand on Morrison to pay the deficiency balance owed within five (5) days from the date of receipt service of this Counterclaim. If Morrison fails to pay the deficiency amount within five (5) days from receipt of the Counterclaim, TMCC will be entitled to recover reasonable attorney's fees from Morrison in the amount of $869.66.

8. **Federal Law requires that TMCC make the following disclosures:**

**(A.) This is an attempt to collect a debt, and any information obtained will be used for that purpose;**

**(B.) The amount of the debt is $5,797.75, plus interest, attorney fees and costs;**

**(C.) The creditor to whom this debt is owed is TMCC;**

**(D.) Unless you dispute this debt, or any portion thereof, in writing within thirty (30) days of your receipt of this notice, the debt will be assumed to be valid. Should you dispute the debt in writing, a verification of the debt will be mailed to you;**

**(E.) Within thirty (30) days of your receipt of this notice, if you request in writing, TMCC shall mail to you the name and address of the original creditor, if different than TMCC.**

9

## SECOND CAUSE OF ACTION
### (UNFAIR TRADE PRACTICE – N.C.G.S. §75-1.1)

9. TMCC incorporates by reference herein as if set forth in its entirety paragraph one (1) through eight (8) of this Counterclaim.

10. Upon information and belief, Morrison is engaged in a pattern and practice of filing frivolous lawsuits in this Court.

11. Upon information and belief, Morrison has a pattern and practice of obtaining credit and subsequently defaulting on payment obligations to trigger creditors to report delinquent account information to credit reporting services.

12. Upon information and belief, Morrison is engaged in a pattern and practice of subsequently disputing negative account information by advising credit reporting services that Morrison is the victim of identity theft and that he did not enter into the finance obligation in question.

13. Upon information and belief, between April 2004 and December 31, 2004, Morrison has filed approximately twenty (20) lawsuits in this Court asserting violations of Federal Consumer Protection Statutes, including six (6) lawsuits alone filed on December 31, 2004.

14. Upon information and belief, a review of the six (6) Complaints Morrison filed on December 31, 2004, indicates that the Complaints are identical in every averment except for the identity of the name Defendant and the dates of alleged dispute of credit information by Morrison.

15. Upon information and belief, Morrison knew or should have known at the time he filed each of these Complaints that his claims asserted were not well founded in law or fact.

16. Upon information and belief, Morrison filed the six (6) Complaints on December 31,

2004, in bad faith and for the purposes of harassment, including but not limited to having accurate credit information deleted without cause and attempting to coerce nuisance settlements.

17. Upon information and belief, Morrison attached to each Complaint served in the six (6) cases files on December 31, 2004, a purported exhibit in which Morrison offers to settle claims for deletion of negative credit information and payment of $5,000.00.

18. Upon information and belief, Morrison's actions regarding TMCC were in or affecting commerce, as the term is used in N.C.G.S. §75-1.1.

19. Upon information and belief, Morrison has engaged in a pattern of unfair and deceptive trade practices, including but not limited to:

    a. Denying that he entered into a Lease Agreement with TMCC;

    b. Denying that he ever had possession of the Motor Vehicle;

    c. Denying that he defaulted on lease payment obligations to TMCC; and

    d. Trying to coerce TMCC into settling claims that Morrison knows or reasonably should know are frivolous and wholly without merit.

20. Upon information and belief, as a result of Morrison's unfair and deceptive trade practices, TMCC is entitled to recover actual damages and to have those damage trebled pursuant to N.C.G.S. §75-16.

21. Upon information and belief, as a result of Morrison's conduct, TMCC is entitled to the recovery of reasonable attorneys pursuant to N.C.G.S. §75-16.1(1).

### THIRD CAUSE OF ACTION
### (INJUNCTIVE RELIEF)

22. TMCC incorporates by reference herein as if set forth in its entirety paragraph one (1)

11

through twenty-one (21) of this Counterclaim.

23. Upon information and belief, Morrison is engaged in a pattern of repeat filing of frivolous lawsuits in bad faith for the purpose of harassing and coercing creditors to remove Morrison's negative account information and to pay nuisance settlements.

24. Upon information and belief, based on Morrison's bad faith, unfair trade practices, and filing of frivolous litigation, TMCC requests that the Court permanently enjoin Morrison, or anyone acting on his behalf, from filing any action concerning claims under any state or federal consumer protection statute in any state or federal court without first obtaining leave of court.

WHEREFORE, Defendant TMCC prays the Court as follows:

1. That Plaintiff recover nothing at law or in equity by way of Plaintiff's Complaint;

2. That Plaintiff's Complaint be dismissed based on the defenses asserted by Defendant TMCC;

3. That TMCC have and recover from Morrison pursuant to TMCC's First Cause of Action the unpaid deficiency balance $5,797.75, plus interest from May 19, 2004, at the statutory rate of 8% per annum, plus reasonable attorney fees of $869.66, plus postjudgment interest, plus court costs;

4. That Defendant TMCC have and recover from Morrison pursuant to TMCC's Second Cause of Action treble damages pursuant to N.C.G.S. §75-1.1 and 75-16, plus reasonable attorney fees pursuant to N.C.G.S. §75-16.1(1);

5. That the Court permanently enjoin Morrison, or anyone acting on his behalf, from filing any action concerning claims under any state or federal consumer protection statutes in any state or federal court without first obtaining leave of court;

12

6. That TMCC be awarded reasonable attorney fees pursuant to 15 U.S.C. §1681(b) for having to defend Plaintiff's Complaint which was filed in bad faith and for purposes of harassment;

7. That Plaintiff Morrison be taxed with all costs of this action; and

8. That the Court award Defendant TMCC such further relief as the Court deems just.

This the 11th day of February, 2005.

CHRISTOPHER LEWIS WHITE, P.A.

_____
Christopher Lewis White
Attorney for Toyota Motor Credit Corporation
N.C. State Bar No. 12798
P.O. Box 31428
Raleigh, North Carolina 27622
Telephone: (919) 832-6778

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ALL INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Answer and Counterclaims in the above-referenced case was served on the following by mailing a copy of the same in a postage-paid envelope to:

James Morrison, pro se
6420 Rea Road, #21
Charlotte, NC 28277

This the 11th day of February, 2005.



CHRISTOPHER LEWIS WHITE, P.A.

Christopher Lewis White
Attorney for Toyota Motor Credit Corporation
N.C. State Bar No. 12798
P.O. Box 31428
Raleigh, North Carolina 27622
Telephone: (919) 676-6996

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ALL INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

2008-001

14

# LEXUS Financial Services
## CLOSED END MOTOR VEHICLE LEASE AGREEMENT
## FLORIDA

**Lease Date:** 01/30/2003

### 1. Parties

| LESSOR (DEALER) NAME AND ADDRESS | LESSEE AND CO-LESSEE NAME AND LESSEE'S BILLING ADDRESS | VEHICLE GARAGING ADDRESS, IF DIFFERENT THAN LESSEE'S BILLING ADDRESS |
|---|---|---|
| LEXUS OF CLEARWATER<br>27747 US HWY 19 N.<br>CLEARWATER FL 33761<br>PHONE NUMBER: (727)725-6000 | JAMES H MORRISON<br>2221 HIGHLANDS WOODS DR<br>DUNEDIN FL 34698<br>COUNTY: PINELLAS | N/A<br><br>COUNTY: |

This is a Lease for the Vehicle described below. The words "you", "your" and "yours" refer to the Lessee and any Co-Lessee. The words "we", "us" and "our" refer to the Lessor, and after assignment, the Toyota Lease Trust ("TLT") and any subsequent assignees. Lexus Financial Services, a division of Toyota Motor Credit Corporation ("LFS") will be servicing this Lease on behalf of TLT. By signing this Lease, you are leasing this Vehicle according to all of the terms of this Lease.

### 2. Description of Leased Vehicle and Trade-In Vehicle
You are leasing from us, and received in satisfactory condition, the following Vehicle:

| New, Used or Demo | Year | Make | Model | Body Style | Vehicle Identification No. | Odometer Mileage | Primary Use |
|---|---|---|---|---|---|---|---|
| NEW | 2003 | LEXUS | GX470 | GX47 | JTJBT20X030083903 | 52 | ☒ Personal, Family or Household<br>☐ Business, Agricultural or Commercial |

You have traded in today the following Vehicle:

Year ____ Make ____ Model ____ Amount of net credit of Trade-In Vehicle used to reduce Capitalized Cost $ __N/A__

### FEDERAL CONSUMER LEASING ACT DISCLOSURES

| 3. Amount Due at Lease Signing or Delivery (Itemized in Section 7 below)<br>$ 1700.00 | 4. Monthly Payments<br>Your first Monthly Payment of $ 718.99 is due on 01/30/2003 followed by 59 payments of $ 718.99 due on the 1st of each month. The total of your Monthly Payments is $ 42658.40 | 5. Other Charges (not part of your Monthly Payment)<br>Disposition fee (if you do not purchase the Vehicle) $ N/A<br>Total $ N/A | 6. Total of Payments (The amount you will have paid by the end of the Lease)<br>$ 43648.41 |
|---|---|---|---|

### Itemization of Amount Due at Lease Signing or Delivery

**7. Amount Due at Lease Signing or Delivery:**
- a. Capitalized Cost Reduction  $ 300.79
- b. First Monthly Payment  $ 718.99
- c. Refundable Security Deposit  $ N/A
- d. Title Fees  $ N/A
- e. Registration Fees  $ N/A
- f. License Fees  $ 95.00
- g. Tax on Capitalized Cost Reduction  $ 21.06
- h. Acquisition Fee  $ N/A
- i. DOC FEE  $ 499.00
- j. ____  $ 73.16
- k. Total  $ 1700.00

**8. How the Amount Due at Lease Signing or Delivery will be Paid:**
- a. Net Trade-In Allowance  $ N/A
- b. Rebates and Noncash Credits  $ N/A
- c. Amount to be Paid in Cash  $ 1700.00
- d. Total  $ 1700.00

**9a. Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 47322.87 and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). For an itemization of this amount, see Section 13.  $ 48738.87

**b. Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost.  – $ 300.79

**c. Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment.  = $ 48438.08

**d. Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment.  – $ 19442.90

**e. Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term.  = $ 28994.18

**f. Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts.  + $ 10874.40

**g. Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge.  = $ 39868.58

**h. Lease Payments.** The number of payments in your Lease.  ÷ 60

**i. Base Monthly Payment.**  = $ 664.48

**j. Monthly Sales/Use Tax.**  + $ 46.51

**k. N/A**  + $ N/A

**l. Total Monthly Payment ("Monthly Payment").**  = $ 718.99

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**10. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 15000 miles per year at the rate of fifteen (15) cents per mile.

**11. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for $ 19442.90.

**12. Other Important Terms.** See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

---

### 13. Itemization of Gross Capitalized Cost
You will pay for the following items over the Lease Term, as part of your Monthly Payment:
- a. Agreed Upon Value of the Vehicle  $ 47322.87
- b. Taxes  + N/A
- c. Initial Title, License and Registration Fees  + N/A
- d. Mechanical Breakdown Protection and/or Maintenance Agreement  + 599.00
- e. Credit Life and/or Disability Insurance  + N/A
- f. Outstanding Prior Credit or Lease Balance  + N/A
- g. Acquisition Fee  + 600.00
- h. N/A  + N/A
- i. OTHER CHARGES  + 17.00
- j. Gross Capitalized Cost  = 48738.87

### 14. Lease Term and Scheduled Maturity Date
The Lease Term of this Lease is 60 months, and the Scheduled Maturity Date of the Lease is 01/29/2008.

### 15. Required Insurance
You must provide the following insurance during the Lease Term with the Lessee and/or Co-Lessee as an insured driver. No other types of insurance are required:
a) primary automobile liability insurance with minimum limits for bodily injury or death of
 i) $ 100000.00 for any one person, and
 ii) $ 300000.00 for any one accident, and
 iii) $ 50000.00 for property damage; and
b) physical damage insurance for the full value of the Vehicle, with a maximum deductible of $1,000.
See Section 24 for additional information.

You have provided us today with the following insurance information:

PROGRESSIVE   30465698
Insurance Provider   Policy No.   Insurance Coverage Verification By Dealer Employee
DIRECT
P.O. BOX 31260 TAMPA FL       (800)776-4737
Agent's Name / Address       336.31       Agent's Phone No.

### 16. Estimated Official Fees and Taxes  $ 3293.32
This is an estimate of the total amount you will pay over the Lease Term for official and license fees, registration, title, and taxes (including personal property taxes), whether included in your Total Monthly Payment (Section 9.1), the Amount Due at Lease Signing or Delivery (Section 7) or billed separately. The actual total of Official Fees and Taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on your current address and may increase if you move or if tax rates change. You are responsible for paying any increases. See Section 26 for additional information.

### 17. Vehicle Maintenance and Damage
You are responsible for all maintenance, repair, service, and operating expenses of the Vehicle. You agree to follow the owner's manual and maintenance schedule, and to provide us with written proof of such maintenance. You are responsible for all damage to the Vehicle and for its loss, seizure or theft. You must tell us immediately if any of these events happen, and cooperate with your insurance company.

### 18. Warranty
If the Vehicle is a new or a demo Vehicle, the Vehicle is subject to the standard new warranty from the manufacturer. If the Vehicle is used, it is not covered by a warranty unless identified below:
☐ Remainder of standard new vehicle warranty from manufacturer
☐ Used vehicle warranty from manufacturer
YOU ARE LEASING THIS VEHICLE "AS IS." WE MAKE NO WARRANTIES AS TO THE VEHICLE'S CONDITION, MERCHANTABILITY, SUITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.

### 19. Optional Insurance and Other Products
You are not required to buy any of the optional insurance or other products listed below to enter into this Lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless the appropriate box is checked, all information is filled in, you initial below, and you are accepted by the Provider. By your initials below, you agree that you have received a notice of the terms of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer).

☐ Optional Credit Life Insurance  $ N/A
 Beginning Coverage
N/A ____
 Insured(s)
N/A ____  $ N/A  ____/____
 Provider  Premium  Lessee/Co-Lessee Initials

☐ Optional Credit Disability Insurance  $ N/A
N/A ____  $ N/A  ____/____
 Provider  Premium  Maximum Monthly Coverage

☐ Optional Mechanical Breakdown Protection  N/A miles / N/A months
 Coverage
N/A ____  $ N/A  ____/____
 Provider  Premium or Charge  Lessee/Co-Lessee Initials

☒ Optional Maintenance Agreement
AUTONATION  $ 599.00  [initials]
 Provider  Premium or Charge  Lessee/Co-Lessee Initials
Total Premiums and Charges  $ 599.00

### 20. Complete Agreement or Modification
By your initials below, you acknowledge that this Lease contains the entire agreement for the Lease of this Vehicle. There are no other agreements. Any change to this Lease must be in writing and signed by you and by us.
[initials]

### 21. Agreement to Arbitrate
By signing below, you agree that at the request of either you or us any controversy or claim (described in Section 44 of this Lease) between you and us shall be determined by neutral binding arbitration by either National Arbitration Forum ("NAF") or J-A-X-8/2nd/dispute ("J-A-M-S"), (the "Administrator") in accordance with: (i) the Federal Arbitration Act; (ii) the Administrator's rules and procedures in effect at the time the claim is filed; and (iii) the rules set forth in Section 44 of this Lease. By initialing this Section, you acknowledge that you have read, understand and agree to the terms of this Section and Section 44.
[initials]

---

NOTICE TO CONSUMER: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ BOTH SIDES OF IT OR IF IT CONTAINS ANY BLANK SPACES; (2) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS LEASE WHEN YOU SIGN IT.

By signing below, you acknowledge that: (1) You have received a completely filled-in copy of this Lease, including the back side; (2) You agree to all of the provisions of this Lease; (3) If you have received a completely filled-in copy of this Lease; (4) This is a Lease; you have no ownership interest in the Vehicle unless and until you exercise your option to purchase as set forth in this Lease.

Lessee Signature __James Morrison__   Co-Lessee Signature ____

The Lessor hereby accepts and assigns to the Toyota Lease Trust all rights, title and interest in the Vehicle and Lessor's rights under any guaranty executed in connection with this Lease, with full powers to the Toyota Lease Trust to collect and discharge all obligations relating to the Vehicle, lease guaranty, and this assignment.

Lessor __LEXUS OF CLEARWATER__ By ____ Title __F.S.M.__ Date __01/30/2003__

PLEASE READ THE BACK SIDE FOR ADDITIONAL TERMS AND CONDITIONS

PREVIOUS EDITIONS MAY NOT BE USED

EXHIBIT A

Case 8:04-cv-00644-CH   Document 5   Filed 02/14/05   Page 15 of 18

## YOUR OBLIGATIONS DURING THIS LEASE

22. **Prohibited Uses of the Vehicle.** You agree that you will not, or permit others to:
   a. use the Vehicle in any illegal manner, in violation of your insurance policy, or without the insurance coverage described in Sections 15 and 24;
   b. alter the Vehicle without our written consent. Any accessions to the Vehicle become our property;
   c. subject the Vehicle to any lien, seizure or other involuntary transfer;
   d. use the Vehicle to transport goods or people for hire;
   e. remove the Vehicle from the state where it was first titled, for more than 30 days, without our written consent;
   f. take the Vehicle outside the Continental United States or Alaska (except to Canada or Mexico for less than 30 days, if you have our consent and have provided us with proof of insurance); or
   g. allow anyone else to regularly use the Vehicle without our written consent.

   Assignment or subleasing by you of the Vehicle or Lease is strictly prohibited.

23. **Title and Registration.** Legal title to the Vehicle will be in our name and the Vehicle will be registered as we direct. You must promptly pay all title, registration and license fees.

24. **Required Insurance.** THE VALID AND COLLECTIBLE LIABILITY INSURANCE AND PERSONAL INJURY PROTECTION INSURANCE OF ANY AUTHORIZED LEASING DRIVER IS PRIMARY FOR THE LIMITS FOR LIABILITY AND PERSONAL INJURY PROTECTION COVERAGE REQUIRED BY SECTIONS 324.021(7) AND 627.736, FLORIDA STATUTES. You may obtain the required coverages through any insurance company, agent, or broker you choose. The insurance policy must be acceptable to us, name the Toyota Lease Trust as additional insured and loss payee, and give us at least 10 days' written notice before any cancellation or reduction in coverage. You authorize us to endorse your name(s) on any check or draft from your insurance company for any claim. You must provide us with written proof of this insurance.

25. **Charges for Late Payments.** If we do not receive a full Monthly Payment within 10 days after it is due, you must pay a late payment charge of 5% of the unpaid amount or $10, whichever is greater.

26. **Payment Obligations.** You may not change or stop your Monthly Payments for any reason, even if the Vehicle is stolen, destroyed, seized by the government, non-operable, experiences any mechanical problem, or does not perform satisfactorily. If you do not return the Vehicle by the Scheduled Maturity Date, you must continue to make the Monthly Payment. However, continued payment does not mean you have our permission to keep the Vehicle. Payments will be applied in the following order: past due payments, current payment due, late charges, other amounts due under this Lease.

27. **Change in Address.** You must notify us in writing within 30 days of any change in your address.

28. **Official Fees, Taxes and Fines.** You must promptly pay all official fees and taxes related to this Vehicle and this Lease, including title, license and registration fees, and sales, use, excise and personal property taxes. You must also promptly pay any fines incurred on the Vehicle, such as traffic or parking fines. Some official fees and taxes may be billed to you by others. You agree that they can be paid by us on your behalf and will be added to your Monthly Payment. You will also pay all fees incurred during the Lease Term, even if they are assessed and billed after the Lease has ended. We may charge you an estimated amount for the remaining fees and taxes at the time this Lease ends. You are responsible for any shortage in this estimate, and we will refund you any excess.

   We are not obligated to apply for any refund or abatement of official fees and taxes, including personal property taxes. If you make a written request that we apply for a refund of an official fee or tax that you paid to us, to which you are entitled, we will file an application for refund. We will send any refund we receive, less any amounts due under this Lease, to you.

   We may pay any title, registration, license fee, tax or fine which you fail to pay, also billings you the amount paid. You are responsible for any fines or penalties if you fail to pay the bill when due.

29. **Default and Loss of the Vehicle.** You will be in default if:
   a. you fail to make any payment when it is due; or
   b. you fail to keep any other agreement in this Lease; or
   c. you provided false or misleading information when applying for this Lease; or
   d. you become the subject of a bankruptcy or insolvency proceeding; or
   e. the Vehicle is lost, stolen, seized, or damaged beyond reasonable repair.

   If you are in default, we may do any of the following after giving any legally required notice, and after expiration of any legally required cure or reinstatement period:
   i. terminate this Lease and your right to use the Vehicle;
   ii. take possession of the Vehicle from your property or elsewhere, in any manner not prohibited by law;
   iii. require you to pay the amounts set forth in Section 31;
   iv. pursue any other remedy allowed by law; and
   v. require you to pay all of our expenses for taking these actions, including, but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorneys' fees paid to an attorney who is not our salaried employee, as allowed by applicable law.

30. **Early Termination by Us.** We may terminate this Lease at any time if you are in default (see Section 29) and you must pay us the amounts set forth in Section 29(v) and Section 31.

31. **Early Termination by You.** If you are not in default, you may terminate this Lease at any time. To do so you must return the Vehicle to us, at a location we specify, and pay us the following amounts:
   a. any Monthly Payments that have become due, or other amounts due under the Lease, except charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); plus
   b. any official fees or taxes charged in connection with the Lease termination, plus
   c. any out of pocket costs paid by us for the sale of the Vehicle, including costs for transporting, storing, preparing for sale, and auctioning the Vehicle; plus
   d. an Early Termination Charge equal to the difference, if any, between the "Adjusted Lease Balance" and the "Fair Market Value" (as defined below); less
   e. any Refundable Security Deposit (Section 35), or refund we receive of Optional Insurance or Other Products (Section 37).

   The "Adjusted Lease Balance" is calculated by adding the remaining Base Monthly Payments not yet due and the Residual Value, and subtracting the unearned portion of the Rent Charge. The unearned portion of the Rent Charge is calculated according to the "constant yield" method.

   The "Fair Market Value" is equal to the price we receive when we dispose of the Vehicle at wholesale. The Fair Market Value may also be determined by an appraisal of the wholesale value of the Vehicle, which you may obtain, at your own expense, from a professional independent appraiser agreed to by us. If you obtain such an appraisal the appraised value will be used as the Fair Market Value. The appraisal must be obtained by you within 10 days after the Vehicle is returned to us.

   If the Vehicle is subject to a total loss or theft resulting in a total loss, the Fair Market Value will equal the amount of any insurance proceeds we receive from your Required insurance. If there are no insurance proceeds, the Fair Market Value will be zero.

   If this Lease is terminated as a result of a total loss or a theft resulting in a total loss of the Vehicle and you have maintained the Required insurance set forth in Section 15, we will waive the Early Termination Charge set forth in Section 31d, after we receive the insurance proceeds and you have paid any deductible amounts.

32. **Your Option to Purchase the Vehicle.** You may purchase the Vehicle at any time during the Lease or at the Scheduled Maturity Date (unless a governmental agency has seized the Vehicle and required us to release the Vehicle to you). The price to purchase the Vehicle at the Scheduled Maturity Date is the Purchase Option Price shown in Section 11, plus 32a, 32b and 32c, below. The price to purchase the Vehicle during the Lease is:
   a. any Monthly Payments that have become due, or other amounts due under this Lease, except charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); plus
   b. any official fees and taxes, or documentary fees charged in connection with the purchase, plus
   c. any amounts necessary to meet any legal setting requirements; plus
   d. the Adjusted Lease Balance as defined in Section 31.

33. **Obligations If You Do Not Purchase the Vehicle at the Scheduled Maturity Date.** At the Scheduled Maturity Date, you must return the Vehicle to us at the location we specify, and pay us the following amounts:
   a. any Monthly Payments or other amounts due under this Lease; plus
   b. any official fees or taxes charged in connection with the Lease termination; plus
   c. any Excessive Wear and Use charges disclosed in Section 34; plus
   d. any excess mileage charge disclosed in Section 10. You will not receive a refund if you do not use all of the mileage set forth in Section 10.

34. **Excessive Wear and Use Charges.** At the Scheduled Maturity Date, if you do not purchase the Vehicle, you must pay us the estimated cost to repair damage to the Vehicle which is excessive wear and use. Excessive wear and use includes, but is not limited to:
   a. inoperative mechanical and electrical parts;
   b. damage (including but not limited to, damage to the engine) due to your failure to maintain the Vehicle in accordance with Section 17;
   c. damage to the body, lights, trim or paint;
   d. damaged, broken or tinted glass;
   e. torn, damaged or stained interior;
   f. damage from flood, water, hail or wind;
   g. damage from removal of equipment or signs placed on the Vehicle;
   h. missing equipment, parts and accessories, including missing keys or remote entry devices; or
   i. tires with less than 3/32 inch of tread remaining, or any tire not part of a matching set of 5 tires (or 4 with an emergency spare if the Vehicle was originally equipped with one).

## ADDITIONAL INFORMATION

35. **Refundable Security Deposit.** Your security deposit may be used by us to pay amounts that you owe under this Lease. Any unused security deposit will be returned to you at the end of the Lease Term. No interest, increase or profits will be paid to you on the security deposit.

36. **Assignment.** We can assign our interest in this Lease and in the Vehicle without your consent. After you sign this Lease, we will assign it to TLT and you agree to make all payments to TLT.

37. **Refund of Optional Insurance or Other Products.** If any optional Insurance or product included in the Gross Capitalized Cost is cancelled before the end of the Lease Term, or if you are not accepted by the Provider for a requested optional insurance or product, we will credit any refunds to your account.

38. **Indemnity.** You agree to indemnify us from, and to perform our behalf, any claim or loss (including damages, costs, expenses and legal fees) which arises from or is related to the use, maintenance or operation of the Vehicle. Any insurance we provide is secondary to the Required insurance.

39. **Credit Information.** You authorize us, at any time, to investigate any information provided on your credit application in order to establish or maintain and collect on this Lease account. You authorize us to provide information concerning your account to credit reporting agencies and others who may lawfully request such information.

40. **Liability.** Lessee and Co-Lessee are jointly and severally liable. If there is both a Lessee and Co-Lessee signing this Lease, we can release, waive or delay the enforcement of our rights against one of you, without affecting our rights as to the other one.

41. **Notices.** All Lessee and Co-Lessee correspondence and notices will be sent to the Lessee's Billing Address shown on the Lease, unless you give us a different address in writing. All correspondence and notices will be given solely in LFS' name, and will be given on behalf of TLT.

42. **Choice of Law and Severability.** You agree that the law of the state in which this Lease is signed applies to this Lease. If certain provisions of this Lease violate the law, those provisions will be void, and the rest of the Lease will be enforceable.

43. **No Waiver by Us.** If we delay or refuse in exercising our rights under this Lease, we do not lose those rights. If we accept late or partial payments from you, we do not waive our right to receive full and timely payments.

## ARBITRATION

44. **Arbitration.** Except as set forth below, any controversy or claim between you and us, including any claim by you against any of our parents, wholly or majority owned subsidiaries, affiliates, predecessors, successors and assigns; and all of the officers, directors and employees of these entities, shall, at the request of either you or us, be determined by neutral binding arbitration by and before either the Administrators selected by you: National Arbitration Forum ("NAF"), P.O. Box 50191, Minneapolis, MN 55405, www.arb-forum.com, (800) 474-2371, or J.A.M.S./Endispute ("J-A-M-S"), 700 11th Street, NW, Suite 450, Washington, DC 20001, www.jams-endispute.com, (800) 352-5267. In accordance with: (1) the Federal Arbitration Act; (2) the Administrator's rules and procedures in effect at the time the claim is filed; (3) the rules set forth in this Section. If you fail to select an Administrator within 20 days from the required time frame, we may select the Administrator. You agree that the right to elect arbitration as set forth herein, can be exercised, to the extent permitted by law, by any third party providing any product or service in connection with this Lease only if such third party is named as a co-defendant with us in a claim asserted by you. Any claims arising out of or relating to the Lease or any related agreements or relationships resulting therefrom are subject to arbitration, including, but not limited to: claims relating to the negotiation of the Lease, advertising or solicitation to the Lease, Lease charges, Lease termination, violations of the Consumer Leasing Act, also leasing and disclosure laws, federal or state consumer protection statutes or regulations; enforcement of any obligation under the Lease; and whether a matter is subject to this Arbitration Agreement. No class action arbitration may be ordered pursuant to this provision; there shall be no joinder or consolidation of parties, except for parties to the same Lease and there shall be no right to arbitrate a claim as a representative of others or in a private attorney general capacity. To the extent permitted by law, the arbitrator shall not have any authority to award punitive damages. In the event of any inconsistency between the rules promulgated by the Administrator, the rules of this Section shall control. Any party to the Lease may bring an action, including a summary or expedited proceeding, to compel arbitration of any controversy or claim to which this Section applies in any court having jurisdiction over such action. Arbitration under this Section shall be administered by the Administrator (who will appoint an arbitrator. Any arbitration hearing at which you appear shall be conducted in the Federal Judicial District in which you live at the time the claim is filed) its Administrator. This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 ("FAA"). Judgment upon the award may be entered in any court having jurisdiction. At the timely request of either party, the arbitrator shall provide a brief written explanation of the basis for the award. Each party shall be responsible for its own arbitration costs and expenses, including attorneys fees, except that the arbitrator may award attorney fees, court costs and other charges if applicable law permits. IF ANY PARTY ELECTS ARBITRATION WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT; TO HAVE A JURY TRIAL ON THAT CLAIM; TO ENGAGE IN PREARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES OF THE ADMINISTRATOR; OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY NOT BE AVAILABLE IN ARBITRATION. Nothing in this agreement shall be deemed to limit the applicable statutes of limitation, or be construed to prevent either party's use of small claims court or bankruptcy court or any other judicial court for representation, replevin, judicial foreclosure or any other prejudgment or provisional remedy relating to any collateral, security or property interests for contracted claims now or hereafter owed by either party to the other under this Agreement. Neither a resort to provisional remedies, nor the filing of any claim or action with a court of law shall constitute a waiver of either party's rights to arbitrate the merits of the controversy or claim occasioning resort to such remedies. With respect to any claims covered by this Agreement, a party who has asserted a claim in a lawsuit in any action for replevin in court may elect arbitration, or may be required to arbitrate, upon request by any claim(s) subsequently asserted in that lawsuit by that party or any other party or parties. If any portion of this Agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the other provisions of this Arbitration Agreement or the Lease.

## MOTOR VEHICLE LEASE ACT DISCLOSURES

THIS IS A LEASE AGREEMENT.
THIS IS NOT A PURCHASE AGREEMENT.
REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.



**LEXUS FINANCIAL SERVICES**
P.O. BOX 2730
MAIL STOP TC13
TORRANCE, CALIFORNIA 90509-2730

Date _____5/19/2004_____

Account Number __04-0772-37894__

James H Morrison
2706 BROOKVILLE DR
VALRICO
FL   33594-7378

☐ VOLUNTARY EARLY TERMINATION
☒ REPOSSESSION
☐ INSURANCE LOSS
☐ SKIP ACCOUNT
☐ OTHER _____

Dear James H Morrison,

As shown on the enclosed form a balance of $____5,797.75____ currently remains due on your account. Under the terms of your Lease Agreement, you are responsible for payment of this amount. To discuss payment of your deficiency balance, please call the Central Collections Department at the toll-free number of (800) 826-9467.

If your lease resulted in a voluntary early termination, as indicated in the applicable box, your account will be handled by a Customer Service Center Representative at (800) 279-9032 ext. 36066 for 15 days following the date of this letter.

After 15 days, if your balance has been not paid in full, your account will be transferred to the Central Collections Department.

If there is a deficiency indicated in this notice, then Toyota Motor Credit Corporation/Lexus Financial Services is attempting to collect a debt and any information obtained will be used for the purpose of collecting the debt.

Very truly yours,

LEXUS FINANCIAL SERVICES

**PREVIOUS EDITIONS MAY NOT BE USED**   LFS 6040 12/2002
InfoSys



EXHIBIT B




# EARLY TERMINATION ACCOUNTING STATEMENT (LEASE VEHICLE)

James H Morrison
2706 BROOKVILLE DR
VALRICO
FL 33594-7378

5/19/2004
ACCT# 04-0772-37894
2003 LEXUS    GX470

*Outstanding Charges:*
| | | |
|---|---:|---:|
| Contract Receivable | 50,009.98 | |
| Payment Receivables | 2,657.91 | |
| Late Charges | 142.20 | |
| Miscellaneous Charges | .00 | |
| Repossession Charges | 350.00 | |
| **Total Receivables** (net of remaining Security Deposit of 0.00) | | 53,160.09 |

*Funds Received:*
| | | |
|---|---:|---:|
| Lease Service Charge Refund | 7,541.62 | |
| Gap and Other Refunds | .00 | |
| Vehicle Service Agreement (VSA) Refund | 467.22 | |
| Life, Accident and Health (LAH) Refund | .00 | |
| Insurance Policy Settlement & Refunds | .00 | |
| Dealer Guarantee Funds Collected | .00 | |
| Other Funds Received | .00 | |
| **Total Proceeds Prior to Vehicle Disposal** | | 8,008.84 |
| **RECEIVABLE BALANCE PRIOR TO VEHICLE DISPOSAL** | | 45,151.25 |

*Vehicle Disposal:*
| | | |
|---|---:|---:|
| Selling Price of Vehicle at Auction | | 39,800.00 |

*Vehicle Disposal Expense:*
| | | |
|---|---:|---:|
| Reconditioning | 77.50 | |
| Title and Registration (DMV) | .00 | |
| Auction Fees | 97.00 | |
| Legal | .00 | |
| Advertising | .00 | |
| Sales Commission | .00 | |
| Storage | .00 | |
| Transportation | 272.00 | |
| Mechanical | .00 | |
| Retake | .00 | |
| Other | .00 | |
| **Total Expense Paid To Auction** | | 446.50 |
| **VEHICLE SALES PROCEEDS** | | 39,353.50 |
| **TOTAL DEFICIENCY** | | 5,797.75 |

If there is a deficiency indicated in this notice, then Toyota Motor Credit Corporation/Lexus Financial Services is attempting to collect a debt and any information obtained will be used for the purpose of collecting the debt.

Security Deposit Breakdown of: 0.00
Reimbursed: 0.00;  Payments Due: 0.00;  Late Charges: 0.00;  Misc Receivables: 0.00;  Applied to Account: 0.00

TMCC/LFS 6041 12/2002
InfoSys